**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**MARIA CAZORLA,  MAGNOLIA PEREZ-HERNANDEZ, IDALIA DOMINGO-MALDONADO, ALMA ROXANA ROBLERO-AGUILAR, IVONE CASTILLO-LOPEZ, MARDOQUEO LOPEZ-LOPEZ, JOSE LUIS CORDERO-TOLEDO, JOSE DOLORES RIVERA-ARANDA, and ERWIN CASTILLO-LOPEZ,**                    **PLAINTIFFS**

**VS.**                    **Civ. Action No. 3:10-cv-135-DPJ-FKB**

**KOCH FOODS OF MISSISSIPPI, LLC and**
**JESSIE ICKOM,**                    **DEFENDANTS**

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

1.   Plaintiffs are Latino workers who were subjected to an ongoing scheme and intentional acts of severe workplace discrimination, including physical and sexual assaults, in the de-bone facility of Defendant Koch Foods' chicken slaughter plant in Morton, Mississippi.

2.   When Plaintiffs complained to Koch Foods management about the discrimination and assaults to which they were subjected in the workplace, Defendants retaliated against them and subjected them to increased threats, intimidation, abuse, and termination.

3.   Plaintiffs seek redress for Defendants' discriminatory acts and negligence under 42 U.S.C. § 1981 and Mississippi law.

**JURISDICTION AND VENUE**

4.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

5.   This Court has supplemental jurisdiction over Plaintiffs' causes of action based on state law pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal claims that they form part of the same case or controversy.

6.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7.   Plaintiff Maria Cazorla is a female Latina who was employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi from 2003 to 2006 and from approximately May 2007 to October 2007.

8.   Plaintiff Magnolia Perez-Hernandez is a female Latina who was employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi from 2005 to 2008.

9.   Plaintiff Idalia Domingo-Maldonado is a female Latina who was employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi from 2005 to 2008.

10. Plaintiff Alma Roblero-Aguilar is a female Latina who was employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi from 2007 to 2008.

11. Plaintiff Ivone Castillo-Lopez is a female Latina who was employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi from 2002 to 2006 and in 2008.

12. Plaintiff Mardoqueo Ariel Lopez-Lopez is a male Latino who has been employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi since 2001.

13. Plaintiff Jose Cordero-Toledo is a male Latino who was employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi from 2001 until 2010.

14. Plaintiff Jose Dolores Rivera-Aranda is a male Latino who was employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi from 2007 until 2009.

15. Plaintiff Erwin Castillo-Lopez is a male Latino who has been employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi since 2006.

16. Defendant Koch Foods of Mississippi LLC (hereinafter "Defendant Koch Foods") is a limited liability company organized under the laws of Mississippi that has its principal place of business in Scott County, Mississippi.

17. Defendant Jessie Ickom (hereinafter "Defendant Ickom") is a natural person who, based on information and belief, resides in Scott County, Mississippi.  Defendant Ickom was employed as a supervisor by Defendant Koch Foods from approximately 2003 until 2008.

### STATEMENT OF FACTS

18. Each Plaintiff was employed by Defendant Koch Foods as a production worker in the thigh processing area of the de-bone facility in Defendant Koch Foods' slaughter plant in Morton, Mississippi (hereinafter "de-bone facility") for some period of time between 2001 and the present.

19. Defendant Koch Foods employed Defendant Ickom to supervise thigh processing employees in the de-bone facility from 2003 to 2008.

20. Defendant Ickom directly supervised all Plaintiffs while they worked in the thigh processing area in the de-bone facility between 2003 and 2008.

21. At all times relevant to this action Defendant Koch Foods delegated to Defendant Ickom the authority to discipline all employees under his supervision, including each Plaintiff.

22. At all times relevant to this action Defendant Koch Foods delegated to Defendant Ickom the authority to transfer or reassign all employees under his supervision, including each Plaintiff.

23. At all times relevant to this action Defendant Koch Foods delegated to Defendant Ickom the authority to demote or promote all employees under his supervision, including each Plaintiff.

24. At all times relevant to this action Defendant Koch Foods delegated to Defendant Ickom the authority to grant or deny requests for leave of all employees under his supervision, including each Plaintiff.

25. At all times relevant to this action Defendant Koch Foods delegated to Defendant Ickom the authority to hire, fire, and/or recommend for hiring or firing all employees under his supervision, including each Plaintiff.

26. From approximately 2004 until his employment at Defendant Koch Foods ended in or about September 2008, Defendant Ickom maintained a reign of terror over Plaintiffs and other Latino workers under his supervision on account of their race, subjecting them to physical assaults, unwelcome sexual advances, unwanted sexual touching, and threats of arrest, deportation, and termination, and demanding payments from them when they requested job transfers, reassignments, and personal or medical leave or break time.

27. Defendant Ickom did not physically assault non-Latino employees under his supervision.

28. Defendant Ickom did not make unwelcome sexual advances upon non-Latino employees under his supervision.

29. Defendant Ickom did not engage in unwanted sexual touching of non-Latino employees under his supervision.

30.  Defendant Ickom did not make threats to non-Latino employees to have them arrested, deported, or terminated.

31. Defendant Ickom regularly threatened Plaintiffs and other Latino employees by saying he would have them fired, arrested, or deported.

32. Defendant Ickom did not demand payments from non-Latino employees in exchange for approving personal leave, medical leave, or break time.

33. Defendant Ickom did not did not demand payments from non-Latino employees in exchange for approving requests for job transfers or reassignments.

34. Defendant Ickom regularly referenced Plaintiffs' race in his harassment and abuse of them, telling them that they had no rights because they were Latino immigrants and threatening to have them deported if they opposed his unlawful conduct.

35. Other supervisors and managers employed by Defendants Koch Foods in the de-bone facility were aware of Defendant Ickom's severe abuses and harassment of Plaintiffs and other Latino workers but failed to take corrective action or steps to protect Plaintiffs.

36. On occasion, other supervisors employed by Defendant Koch Foods directly participated in Defendant Ickom's harassment, abuse, and discriminatory treatment of Plaintiffs and other Latino workers.

37. When Plaintiffs opposed the unlawful and abusive practices to which they were subjected in the de-bone facility, they were subjected to retaliation in the form of physical threats, physical assaults, sexual assaults, threats of firing, threats of deportation, undesirable job reassignments, and actual and constructive termination.

### Plaintiff Maria Cazorla

38. Ms. Cazorla was employed by Defendant Koch Foods in the de-bone facility at its slaughter plant in Morton, Mississippi from 2003 to 2006 and from approximately May 2007 to October 2007.

39. On multiple occasions between 2004 and 2007, Ms. Cazorla requested that Defendant Ickom grant her personal leave, medical leave, and break time to which she was entitled.  Defendant Ickom demanded payments from Ms. Cazorla in return for approving her leave or break requests and threatened to sanction or fire her if she took leave without paying him these bribes.

40.  When Ms. Cazorla told Defendant Ickom that she did not have cash on hand to pay him, Defendant Ickom used physical intimidation and threats of firing to refuse to allow her to take leave to which she was entitled.

41. On multiple occasions between 2004 and 2007, Defendant Ickom made offensive and derogatory remarks about Ms. Cazorla's race, indicating, for example, that she had no rights because she was a Latino immigrant.

42. In or about May 2007, Ms. Cazorla requested permission from Defendant Ickom to transfer from hourly work to a more desirable piece-rate position in the thigh processing area.  Defendant Ickom refused to approve her transfer until she paid him money.

43. Ms. Cazorla was qualified for the piece-rate position.

44. Defendant Ickom's demand that Ms. Cazorla pay him to approve her transfer to the more desirable piece-rate position was on account of her race.

45. Ms. Cazorla witnessed Defendant Ickom physically assault and harass Latino employees whom he supervised.  For example, she witnessed Defendant Ickom physically drag back to the production line Latino employees whom he supervised and who attempted to leave the plant without paying the bribe he demanded.

46. Defendant Ickom's demands for payments, threats, and intimidation of Ms. Cazorla and Latino employees constituted a pattern of ongoing hostile, harassing, and abusive conduct towards her on the basis of her race.

47. Ms. Cazorla opposed Defendant Ickom's harassing and discriminatory conduct towards her and other Latino employees by reporting it to management of Defendant Koch Foods.

48. When Ms. Cazorla opposed Defendant Ickom's discriminatory treatment, abuse, and harassment of her and other Latino employees by telling him that she planned to report his conduct to other managers and by refusing to make payments to him, Defendant Ickom responded by making derogatory comments about her race or ethnicity.

49. On multiple occasions in early 2006 and throughout her employment with Defendant Koch Foods in 2007, Ms. Cazorla complained to a de-bone facility manager,

whose name on information and belief is "Sue," about Defendant Ickom's demands that she and other Latino employees pay him in exchange for granting leave or break time and Defendant Ickom's abusive and harassing conduct towards her and other Latino employees.

50. In July 2007, Ms. Cazorla complained on multiple occasions to managers in the personnel department of Defendant Koch Foods about Defendant Ickom.  For example, on or about July 3, 2007, Ms. Cazorla filled out a written complaint form in the personnel department regarding Defendant Ickom.

51. On or about July 13, 2007, she complained in person to plant manager David LeBlanc about Defendant Ickom's discriminatory and abusive treatment of Latino employees.

52. On or about September 2007, Ms. Cazorla complained to an assistant manager in the de-bone facility, whose name on information and belief is "Eric," regarding Defendant Ickom's abuses and discriminatory mistreatment of her and other Latino employees.  In response, "Eric" asked Ms. Cazorla about her immigration status and demanded to see proof of her lawful immigration status.  When Ms. Cazorla presented proof of her lawful status to "Eric," he suggested that her papers were not valid and asked her where she had gotten them.

53. In or about late September or early October 2007, in the presence of Defendant Ickom, Ms. Cazorla complained to de-bone area manager "Sue" about Defendant Ickom's abuse and mistreatment of her and other Latino employees.  Ms. Cazorla showed Defendant Ickom and "Sue" a document demonstrating her lawful status.  "Sue" and Defendant Ickom mocked the document that Ms. Cazorla showed them, indicating that

they did not believe it was authentic, and told Ms. Cazorla that she could throw that document in the trash.

54. "Sue" told Ms. Cazorla that she could continue in her employment with Defendant Koch Foods only if she accepted a transfer away from the thigh processing area, where she was paid on a piece-rate basis, to a lower-paid hourly position assembling boxes, did not speak to other employees, and did not take breaks at the same time as other employees.

55. Managers at Defendant Koch Foods do not request that African-American or White employees present proof of citizenship or lawful immigration status in order to make a personnel complaint.

56. Managers at Defendant Koch Foods do not question the validity of the citizenship documentation of White or African-American employees.

57. Throughout the summer and fall of 2007, Defendant Ickom became increasingly enraged at Ms. Cazorla because of her opposition to his unlawful and discriminatory treatment of her and other Latino employees under his supervision.

58. As a result of her opposition to his discriminatory conduct, Defendant Ickom became increasingly hostile and physically threatening and took other adverse employment actions against Ms. Cazorla.

59. For example, Defendant Ickom regularly approached Ms. Cazorla from behind as she worked on the cutting line and pressed his body against her in a threatening manner and berated, mocked, and threatened her in front of other employees.  Defendant Ickom also reassigned Ms. Cazorla to the least desirable spots on the thigh cutting line.

60. On or about August 2007, Defendant Ickom told other Latino employees under his supervision in the presence of Ms. Cazorla that any effort to report his abusive conduct to management of Defendant Koch Foods would be futile.  Defendant Ickom stated mockingly that even Ms. Cazorla with her citizenship papers had not had any success in convincing his supervisors to stop his mistreatment.

61. Ms. Cazorla reasonably felt physically unsafe in the de-bone facility because she had angered Defendant Ickom and because management at Defendant Koch Foods offered her no protection from Defendant Ickom.

62. As a result of Defendant Ickom's ongoing harassment and abuse of Ms. Cazorla, his retaliatory threats towards her when she opposed his unlawful conduct, and the refusal of Defendant Koch Foods management to protect her from Defendant Ickom, she reasonably felt compelled to resign from her employment at Defendant Koch Foods on or about October 9, 2007.

63. In July 2009, Ms. Cazorla applied for employment at the chicken processing plant of Defendant Koch Foods in Forest, Mississippi.  Defendant Koch Foods denied her application for employment.

64. The grounds that Defendant Koch Foods offered for its denial of Ms. Cazorla 's employment application were that its records demonstrated that she had suffered a work-related injury during her previous employment at its Morton plant that would preclude her from carrying out the job duties in the position for which she was applying at the Forest plant.

65. These stated grounds for the denial by Defendant Koch Foods of Ms. Cazorla's 2009 employment application were false and pretextual.  Defendant Koch Foods denied

Ms. Cazorla's July 2009 employment application in retaliation for her opposition to Defendant Koch Foods and Defendant Ickom's unlawful and discriminatory employment practices during her employment with Defendant Koch Foods at its Morton plant in 2007.

66. In March 2010, approximately three weeks after Ms. Cazorla filed Plaintiff's Original Complaint, Defendant terminated the employment of Ms. Cazorla's husband, Plaintiff Jose Cordero-Toledo.

67. Defendant's termination of Mr. Cordero-Toledo was in retaliation for Ms. Cazorla's opposition to Defendants' unlawful and discriminatory treatment of Latino employees, and resulted in emotional and monetary harm to Ms. Cazorla.

### *Plaintiff Magnolia Perez-Hernandez*

68. Plaintiff Magnolia Perez-Hernandez was employed by Defendant Koch Foods in the de-bone facility of its slaughter plant from 2005 to 2008.

69. Between 2005 and 2008, while acting in his supervisory capacity, Defendant Ickom subjected Ms. Perez-Hernandez to a pattern of ongoing hostile, harassing, and abusive conduct on the basis of her race.

70. Defendant Ickom was hostile and verbally abusive to Ms. Perez-Hernandez throughout her employment at Defendant Koch Foods between 2005 and 2008, regularly insulting her, denying her requests for restroom breaks, and berating her for working too slowly or for raising her head from the production line.

71. Defendant Ickom also subjected Ms. Perez-Hernandez to ongoing and pervasive unwelcome verbal and physical conduct of a sexual nature, including, but not limited to, repeated unwelcome sexual advances, touching her buttocks, and attempting to grope her breasts and kiss her.

72. For example, on one occasion Defendant Ickom accosted Ms. Perez-Hernandez in the hallway of the de-bone facility during a scheduled break, grabbing her by her work apron, forcibly holding her arms back and trying to kiss her neck and chest as she struggled against him. Ms. Perez-Hernandez broke free from Defendant Ickom only when another worker approached in the hallway.

73. On multiple occasions between 2005 and 2007, Defendant Ickom approached Ms. Perez-Hernandez as she worked and touched her buttocks.  Defendant Ickom also struck Ms. Perez-Hernandez in the ribs when he passed behind her as she worked.

74. When Ms. Perez-Hernandez opposed Defendant Ickom's sexual and physical assaults and told him she would report his unlawful activities to other managers, Defendant Ickom scoffed at her and told her that no one would listen to her because her immigration papers were bad and she had no rights in the United States.

75. Defendant Ickom further threatened Ms. Perez-Hernandez by telling her that if she reported him to other managers, he would fire her and report her to immigration.

76. On one occasion in late 2007 and/or early 2008, a second de-bone facility supervisor, who on information and belief is named "Frank," approached Ms. Perez-Hernandez as she weighed chicken product and taunted her and threw ice at her.  "Frank" also touched Ms. Perez-Hernandez on her buttocks.

77. Defendant Ickom watched "Frank" touch Ms. Perez-Hernandez on her buttocks and laughed.

78. In or about February 2008, Ms. Perez-Hernandez went to a management office to report Defendant Ickom's abuses.  Defendant Ickom followed her to the management office, threatening her and physically and sexually assaulting her in the hallway.

79. Ms. Perez-Hernandez broke free from Defendant Ickom and located a Spanish-speaking Koch Foods employee in the area of the management offices.  Ms. Perez-Hernandez asked the Spanish-speaking employee to interpret for her as she reported Defendant Ickom's unlawful conduct to "Sue."

80. When "Sue" arrived to the management office area, she spoke first to Defendant Ickom and laughed with him.  She then turned to Ms. Perez-Hernandez.  Through the Spanish-speaking employee, Ms. Perez-Hernandez explained the discriminatory abuses and harassment to which she had been subjected by Defendant Ickom.

81. Through the Spanish-speaking employee, "Sue" told Ms. Perez-Hernandez that she needed to resign because she had not followed Defendant Ickom's directions.  "Sue" terminated Ms. Perez-Hernandez and forced her to sign papers in English.

82. Defendants Koch Foods and Jessie Ickom terminated Ms. Perez-Hernandez in retaliation for her opposition to Defendants' unlawful discriminatory acts.

### *Plaintiff Idalia Domingo-Maldonado*

83. Plaintiff Idalia Domingo-Maldonado was employed by Defendant Koch Foods in the de-bone facility of its slaughter plant in Morton from 2005 to 2008.

84. Between 2005 and 2008, while acting in his supervisory capacity, Defendant Ickom subjected Ms. Domingo-Maldonado to a pattern of ongoing hostile, harassing, and abusive conduct on the basis of her race.

85. Between 2005 and 2008, Defendant Ickom subjected Ms. Domingo-Maldonado to ongoing and pervasive unwelcome verbal and physical conduct of a sexual nature, including, but not limited to, repeated unwelcome sexual advances and propositions and touching her genital and buttocks areas as she worked under his supervision.

86. For example, in or around August or September 2008, Defendant Ickom grabbed Ms. Domingo-Maldonado in a hallway as she walked to her car during a scheduled break and began to forcibly kiss her.  Although Ms. Domingo-Maldonado resisted, Defendant Ickom managed to grope Ms. Domingo-Maldonado's breast underneath her shirt while threatening her and telling her to be quiet.  Ms. Domingo-Maldonado escaped when Defendant Ickom became distracted by another person approaching in the hallway.

87. Furthermore, Defendant Ickom was hostile and verbally abusive to Ms. Domingo-Maldonado throughout her employment at Defendant Koch Foods.  Defendant Ickom regularly berated Ms. Domingo-Maldonado, claiming that she was not working fast enough, that she was leaving too many bones in the chicken product, and that lifted her head while she was working.

88. On occasion when he was angry at her, he physically dragged her from one area of the de-bone facility to another to force her to perform another task.  Defendant Ickom regularly struck Ms. Domingo-Maldonado on her shoulder or in her ribs in anger while she worked.

89. Defendant Ickom referenced Ms. Domingo-Maldonado's race when he harassed her, telling her that because she was a Latina and he was an American, she had no rights and had to obey his orders.   Defendant Ickom also regularly said to Ms. Domingo-Maldonado when he was harassing or touching her, "Immigration for you!"

90. Defendant Ickom regularly demanded money from Ms. Domingo-Maldonado in exchange for her requests for permission to take break or leave time to which she was entitled under her employment contract with Defendant Koch Foods.

91. Defendant Ickom threatened Ms. Domingo-Maldonado with firing, deportation, and heightened physical and sexual assaults if she did not comply with his demands for money.

92. Defendant Ickom demanded money from Ms. Domingo-Maldonado in exchange for granting her leave and break time and issued threats to force her to comply with these demands because of her race.

93. Ms. Domingo-Maldonado regularly paid money to Defendant Ickom because she needed to access leave and break time to which she was entitled and because she reasonably believed that Defendant Ickom would carry out his threats of harm if she did not pay him.

94. Ms. Domingo-Maldonado opposed Defendant Ickom's discriminatory sexual advances and his discriminatory demands for money in exchange for obtaining permission to take leave or break time by complaining to him about these unlawful acts and telling him not to touch her.

95. In response to her opposition to his unlawful and discriminatory acts, Defendant Ickom threatened Ms. Domingo-Maldonado with firing and deportation and heightened his physical and sexual assaults on her.

96. Defendant Ickom also assigned Ms. Domingo-Maldonado to undesirable job tasks, such as hanging heavy chickens in an area of the de-bone facility, because she opposed his discriminatory sexual advances and his discriminatory demands for money in exchange for obtaining permission to take leave or break time.

### *Plaintiff Alma Roblero-Aguilar*

97. Plaintiff Alma Roxana Roblero-Aguilar was employed by Defendant Koch Foods in the de-bone facility of its slaughter plant in Morton from 2007 to 2008.

98. Between 2007 and 2008, while acting in his supervisory capacity, Defendant Ickom subjected Ms. Roblero-Aguilar to a pattern of ongoing hostile, harassing, and abusive conduct on the basis of her race.

99. Defendant Ickom was hostile and verbally abusive to Ms. Roblero-Aguilar throughout her employment at Defendant Koch Foods between 2007 and 2008, regularly insulting her, denying her requests for restroom breaks, and berating her for working too slowly.

100.    For example, in June 2007, Defendant Ickom responded to a request from Ms. Roblero-Aguilar for permission to go to the bathroom by grabbing her work scissors from her hands, hurling them into a box of chicken product, and swearing at her.

101.    When Ms. Roblero-Aguilar complained to Defendant Ickom about his treatment of her, he responded to her by making derogatory remarks about her race, for example, by referring to her with the Spanish term for "wetback" and telling her she had no papers.

102.    Defendant Ickom also subjected Ms. Roblero-Aguilar to ongoing and pervasive unwelcome verbal and physical conduct of a sexual nature, including, but not limited to, repeated unwelcome sexual advances, offers to pay her money in exchange for sex, touching her buttocks, and attempting to grope her breasts and kiss her.

103.    In 2007 and 2008, Defendant Ickom regularly demanded money from Plaintiff Roblero-Aguilar when she requested break or leave time to which she was entitled under her employment contract with Defendant Koch Foods.  Defendant Ickom

threatened Ms. Roblero-Aguilar with firing, deportation, and heightened physical and sexual assaults if she did not comply with his demands.

104.     Defendant Ickom demanded money from Ms. Roblero-Aguilar in exchange for granting her leave and break time and issued threats to force her to comply with these demands because of her race.

105.     Ms. Roblero-Aguilar regularly paid money to Defendant Ickom because she needed to access leave and break time to which she was entitled and because she reasonably believed that Defendant Ickom would carry out his threats of harm if she did not pay him.

106.     In 2008, after Ms. Roblero-Aguilar went to a doctor's appointment without first paying money to Defendant Ickom, he became enraged.  He cornered Ms. Roblero-Aguilar in an isolated area of the slaughter plant and groped her legs.

107.     Ms. Roblero-Aguilar regularly resisted Defendant Ickom's harassment and assaults and told him she would report him to other Koch Foods managers.

108.     When Ms. Roblero-Aguilar resisted Defendant Ickom's harassment and assaults and told him she would report him to company managers, he told her that she had no rights because she was an immigrant.  On one occasion Defendant Ickom told Ms. Roblero-Aguilar that she did not have rights like the others, while gesturing towards several African-American workers nearby.

109.     In late 2007, Ms. Roblero-Aguilar opposed Defendant Ickom's unlawful practices by reporting his unwanted sexual touching of her another supervisor in the Koch Foods de-bone facility whose name is "Frank."  "Frank" responded to Ms. Roblero-Aguilar's reported that Defendant Ickom had touched her by laughing and saying "OK."

*Plaintiff Ivone Castillo-Lopez*

110.     Plaintiff Ivone Marine Castillo-Lopez was employed by Defendant Koch Foods in the de-bone facility of its slaughter plant from 2002 to 2006 and in 2008.

111.     Ms. Castillo-Lopez is the spouse of Mr. Lopez-Lopez.

112.     Between 2004 and 2006 and in 2008, while acting in his supervisory capacity, Defendant Ickom subjected Ms. Castillo-Lopez to a pattern of ongoing hostile, harassing, and abusive conduct on the basis of her race.

113.     Defendant Ickom regularly demanded money from Ms. Castillo-Lopez in exchange for her requests for permission to take break or leave time to which she was entitled under her employment contract with Defendant Koch Foods.  Defendant Ickom threatened Ms. Castillo-Lopez with firing, deportation, and heightened physical and sexual assaults to Ms. Castillo-Lopez if she did not comply with his demands.

114.     Defendant Ickom demanded money from Ms. Castillo-Lopez in exchange for granting her leave and break time and issued threats to force her to comply with these demands because of her race.

115.     Ms. Castillo-Lopez regularly paid money to Defendant Ickom because she needed to access leave and break time to which she was entitled and because she reasonably believed that Defendant Ickom would carry out his threats of harm if she did not pay him.

116.     In the summer of 2008, Defendant Ickom demanded money from Ms. Castillo-Lopez in exchange for transferring her from an hourly position to a more lucrative piece-rate position on the cutting line.

117.    Defendant Ickom regularly made derisory remarks about Ms. Castillo-Lopez's race, calling her illegal and telling her she had no rights.  Defendant Ickom sometimes referred to Ms. Castillo-Lopez and other Latino workers as "fucking Mexicans."

118.    Between 2004 and 2006 and in 2008, Defendant Ickom also subjected Ms. Castillo-Lopez to ongoing and pervasive unwelcome verbal and physical conduct of a sexual nature, including unwelcome sexual advances, offers to pay her money in exchange for sex, touching her buttocks while she worked on the production floor, and attempting to grope her breasts and kiss her when he encountered her in hallways in the de-bone facility.

119.    For example, in or around late August 2008, Defendant Ickom told Ms. Castillo-Lopez that she owed him money in exchange for a job transfer from an hourly position to the cutting line and demanded that she pay him with sex or money.  In demanding that she pay him, Defendant Ickom threatened to have Ms. Castillo-Lopez deported and told her that because this was America, she had to pay him.

120.    Ms. Castillo-Lopez opposed Defendant Ickom's discriminatory conduct, harassment, and abuse by telling him not to touch her, by refusing to pay him, and by telling him she planned to report his conduct to Koch Foods managers.

121.    When Ms. Castillo-Lopez opposed Defendant Ickom's unwelcome sexual advances and his discriminatory and unlawful demands for money, Defendant Ickom retaliated against Ms. Castillo-Lopez by increasing the frequency of his sexual assaults and advances towards her and threatening her and Ms. Castillo-Lopez physically and with termination or deportation.

### Plaintiff Mardoqueo Lopez-Lopez

122.       Plaintiff Mardoqueo Lopez-Lopez has been employed by Defendant Koch Foods in the de-bone facility of its slaughter plant in Morton since 2001.

123.       Plaintiff Mardoqueo Lopez-Lopez is the spouse of Plaintiff Ivone Lopez-Castillo.

124.       Between 2004 and 2008, while acting in his supervisory capacity, Defendant Ickom subjected Mr. Lopez-Lopez to a pattern of ongoing hostile, harassing, and abusive conduct on the basis of his race.

125.       Defendant Ickom was hostile and verbally and physically abusive to Mr. Lopez-Lopez between 2004 and 2008 at Defendant Koch Foods, regularly demanding money from him, assaulting him, and referring to him and other Latino employees in a derogatory manner as illegals.

126.       Between 2001 and 2008, Defendant Ickom regularly hit and punched Mr. Lopez-Lopez in the ribs and in his side while Mr. Lopez-Lopez worked on the thigh cutting line under Defendant Ickom's supervision.  Defendant Ickom sometimes made references to Mr. Lopez-Lopez's race and ethnicity when he hit him, such as telling Mr. Lopez-Lopez that he had no immigration papers.

127.       Defendant Ickom regularly demanded money from Mr. Lopez-Lopez in exchange for his requests for permission to take break or leave time to which he was entitled under his employment contract with Defendant Koch Foods.  Defendant Ickom also demanded money from Mr. Lopez-Lopez in exchange for approving job transfers or leave requests for Mr. Lopez-Lopez's spouse, Ms. Castillo-Lopez.  Defendant Ickom

threatened Mr. Lopez-Lopez with firing, deportation, and heightened physical assaults to Mr. Lopez-Lopez if he did not comply with his demands.

128.     Defendant Ickom demanded money from Mr. Lopez-Lopez in exchange for granting him and his spouse leave and break time because of his race.

129.     Mr. Lopez-Lopez regularly paid money to Defendant Ickom because he needed to access leave and break time to which he was entitled and because he reasonably believed that Defendant Ickom would carry out his threats of harm if he did not pay him.

130.     Mr. Lopez-Lopez told Defendant Ickom that such demands were not permissible and that he would report these actions to other managers of Defendant Koch Foods.

131.     When Mr. Lopez-Lopez opposed Defendant Ickom's discriminatory demands for payment in exchange for approval of break or leave time or job transfers, Defendant Ickom retaliated against Mr. Lopez-Lopez by making deductions from his piece rate wages, by making physical threats to Mr. Lopez-Lopez, such as by making a slitting motion across his throat, by physically assaulting Mr. Lopez-Lopez, and by threatening Plaintiffs Lopez-Lopez and Castillo-Lopez with termination and deportation.

132.     On various occasions when Mr. Lopez-Lopez opposed Defendant Ickom's discriminatory demands for payment in exchange for approvals of his or Ms. Castillo-Lopez's leave, break, or transfer requests, Defendant Ickom took chicken that Mr. Lopez-Lopez had de-boned from Mr. Lopez-Lopez's buckets.  Because Mr. Lopez-Lopez was paid by the pound of chicken he produced, this action amounted to a deduction from Mr. Lopez-Lopez's wages.

### Plaintiff Jose Cordero-Toledo

133.     Plaintiff Jose Cordero-Toledo was employed by Defendant Koch Foods in the de-bone facility of its slaughter plant in Morton from 2001 until 2010.

134.     Plaintiff Jose Cordero-Toledo is the spouse of Plaintiff Maria Cazorla.

135.     Between 2004 and 2008, while acting in his supervisory capacity, Defendant Ickom subjected Mr. Cordero-Toledo to a pattern of ongoing hostile, harassing, and abusive conduct on the basis of his race.

136.     Defendant Ickom was hostile and verbally and physically abusive to Mr. Cordero-Toledo between 2004 and 2008 at Defendant Koch Foods, regularly demanding money from him, assaulting him, and making threats of violence and deportation to him and other Latino employees.

137.     Between 2004 and 2008, Defendant Ickom regularly punched Mr. Cordero-Toledo in the ribs and in his side and pushed him while Mr. Cordero-Toledo worked on the thigh cutting line under Defendant Ickom's supervision.

138.     Defendant Ickom regularly demanded money from Mr. Cordero-Toledo in exchange for his requests for permission to take break or leave time to which he was entitled under his employment contract with Defendant Koch Foods.  Defendant Ickom also demanded money from Mr. Cordero-Toledo in exchange for approving leave requests for Mr. Cordero-Toledo's spouse, Ms. Cazorla.

139.     Defendant Ickom demanded money from Mr. Cordero-Toledo in exchange for granting him and his spouse leave and break time because of his race.

140.     Mr. Cordero-Toledo regularly paid money to Defendant Ickom because he needed to access leave and break time to which he was entitled and because he

reasonably believed that Defendant Ickom would carry out his threats of harm if he did not pay him.

141.     Mr. Cordero-Toledo opposed Defendant Ickom's unlawful and discriminatory conduct by telling Ickom to stop assaulting him and demanding money from him, and by supporting his wife, Ms. Cazorla, in her complaints to management of Defendant Koch Foods about Ickom.

142.     In the late summer or early fall of 2007, Mr. Cordero-Toledo further opposed Defendant Ickom's unlawful and discriminatory conduct by accompanying his spouse Ms. Cazorla to meetings with Koch Foods management about Ickom's discriminatory treatment of Latino employees and participating in those meetings.

143.     When Mr. Cordero-Toledo opposed Defendant Ickom's discriminatory conduct and supported his spouse Ms. Cazorla in her opposition to Defendant Ickom's discriminatory conduct, Defendant Ickom retaliated against Mr. Cordero-Toledo by increasing his physical assaults on Mr. Cordero, making threatening and obscene gestures to Mr. Cordero-Toledo and Ms. Cazorla, and by threatening Mr. Cordero-Toledo with termination.

144.     On or about March 19, 2010, less than three weeks after Ms. Cazorla filed Plaintiff's Original Complaint against Defendants Koch Foods and Jessie Ickom, Defendant Koch Foods terminated Mr. Cordero-Toledo's employment.

145.     Defendant Koch Foods terminated Mr. Cordero-Toledo's employment in retaliation for his spouse Maria Cazorla's opposition to Defendants' unlawful and discriminatory treatment of Latino employees and for his participation in and support of

Ms. Cazorla's opposition to Defendant Koch Foods' unlawful and discriminatory practices.

### *Jose Dolores Rivera-Aranda*

146.    Plaintiff Jose Dolores Rivera-Aranda was employed by Defendant Koch Foods in the de-bone facility of its slaughter plant in Morton from 2007 until 2009.

147.    Between 2007 and 2008, while acting in his supervisory capacity, Defendant Ickom subjected Mr. Rivera-Aranda to a pattern of ongoing hostile, harassing, and abusive conduct on the basis of his race.

148.    Defendant Ickom was hostile and verbally and physically abusive to Mr. Rivera-Aranda throughout his employment at Defendant Koch Foods between 2007 and 2009, regularly demanding money from him and assaulting him.

149.    Between 2007 and 2008, Defendant Ickom regularly hit and punched Mr. Rivera-Aranda in the ribs and in his side while Mr. Rivera-Aranda attempted to carry out his job duties, including cleaning floors and moving boxes of chicken product within the de-bone facility.

150.    On several occasions in 2008, Defendant Ickom struck Mr. Rivera-Aranda's knees and stomach with a work cart that Mr. Rivera-Aranda used to move chicken product. On other occasions, Defendant Ickom struck Mr. Rivera-Aranda in the head.

151.    Other workers in the de-bone facility witnessed Defendant Ickom assaulting Mr. Rivera-Aranda and sometimes laughed at and made fun of Mr. Rivera-Aranda.

152.     Defendant Ickom regularly demanded money from Mr. Rivera-Aranda in exchange for his requests for permission to take break or leave time to which he was entitled under his employment contract with Defendant Koch Foods or to go to the bathroom.

153.     Defendant Ickom demanded money from Mr. Rivera-Aranda in exchange for granting him leave and break time or permission to go to the bathroom because of his race.

154.     When Mr. Rivera-Aranda opposed Defendant Ickom's discriminatory demands for payment in exchange for approval of break or leave time, Defendant Ickom retaliated against Mr. Rivera-Aranda by threatening him with deportation and termination, and by increasing the frequency of his physical assaults on Plaintiff Rivera-Aranda.

### *Plaintiff Erwin Castillo-Lopez*

155.     Plaintiff Erwin Castillo-Lopez has been employed by Defendant Koch Foods in the de-bone facility of its slaughter plant in Morton since 2006.

156.     Between 2006 and 2008, while acting in his supervisory capacity, Defendant Ickom subjected Mr. Castillo-Lopez to a pattern of ongoing hostile, harassing, and abusive conduct on the basis of his race.

157.     Defendant Ickom was hostile and verbally and physically abusive to Mr. Castillo-Lopez between 2006 and 2008 at Defendant Koch Foods, regularly demanding money from him, assaulting him, and threatening him.

158.     Defendant Ickom regularly demanded money from Mr. Castillo-Lopez in exchange for his requests for permission to take break or leave time to which he was

entitled under his employment contract with Defendant Koch Foods and in exchange for Mr. Castillo-Lopez's request for permission to use the restroom.

159.    Defendant Ickom threatened Mr. Castillo-Lopez with firing, deportation, and heightened physical assaults to Mr. Castillo-Lopez if he did not comply with his demands.

160.    Mr. Castillo-Lopez regularly paid money to Defendant Ickom because he needed to access leave and break time to which he was entitled and because he reasonably believed that Defendant Ickom would carry out his threats of harm if he did not pay Defendant Ickom.

161.    Defendant Ickom demanded money from Mr. Castillo-Lopez in exchange for granting him leave and break time or permission to go to the bathroom because of his race.

162.    On one occasion in or around early 2007, Defendant Ickom demanded money from Mr. Castillo-Lopez in exchange for approving Mr. Castillo-Lopez's request for a transfer from an hourly to piece-rate position in the de-bone area.

163.    Mr. Castillo-Lopez was qualified for the piece-rate position.

164.    Defendant Ickom demanded money from Mr. Castillo-Lopez in exchange for approving his transfer to a piece-rate position because of his race.

165.    Mr. Castillo-Lopez opposed Defendant Ickom's demands for money in exchange for approving Mr. Castillo-Lopez's requests for leave or break time or to go to the bathroom by telling him that such demands were not permissible.

166.    When Mr. Castillo-Lopez opposed Defendant Ickom's discriminatory demands for payment in exchange for approval of break or leave time or job transfers,

Defendant Ickom retaliated against Mr. Castillo-Lopez by threatening him with termination, by threatening him with increased physical assaults, and by increasing the physical assaults on Mr. Castillo-Lopez.

### *Defendant Ickom's Termination and Subsequent Retaliation*

167.     On information and belief, Defendant Ickom was terminated from employment with Defendant Koch Foods on or around September 13, 2008.

168.     Plaintiffs Erwin Castillo-Lopez, Ivone Castillo-Lopez and Mardoqueo Lopez-Lopez were subjected to intense retaliation, intimidation, and threats by Defendant Ickom and other employees of Defendant Koch Foods following Defendant Ickom's termination.

169.     Days after Defendant Ickom's termination, Defendant Ickom entered the parking lot of Defendant Koch Foods' Morton plant to confront and threaten Plaintiffs Castillo-Lopez and Lopez-Lopez.  Defendant Ickom told Plaintiffs Castillo-Lopez and Lopez-Lopez that he knew they had reported him to Defendant Koch Foods' management and gotten him fired.

170.     Defendant Ickom told Plaintiffs Castillo-Lopez and Lopez-Lopez that he knew where they lived and that he would have them deported.  Plaintiffs Castillo-Lopez and Lopez-Lopez were reasonably frightened for their physical safety and that of their family because of Defendant Ickom's threats.

171.     That same day, in the parking lot of Defendant Koch Foods' Morton plant, Defendant Ickom physically attacked Plaintiff Erwin Castillo-Lopez, whom Defendant Ickom accused of having reported him.  Furthermore, on information and belief,

Defendant Ickom slashed the tires of Plaintiff Erwin Castillo-Lopez's car, which was parked in the parking lot of Defendant Koch Foods' Morton plant, with a knife.

172.     Also that day, Defendant Ickom went to the home of Plaintiffs Ivone Castillo-Lopez and Mardoqueo Lopez-Lopez and in the presence of Plaintiff Castillo-Lopez beckoned threateningly to their young daughter, who was in their front yard.

173.     In the weeks that followed, other employees in Defendant Koch Foods' de-bone facility insulted and threatened Plaintiffs, saying that Plaintiffs had gotten Defendant Ickom and other employees of Defendant Koch Foods fired and that Defendant Ickom or other employees would come get Plaintiffs.

174.     The intensified workplace harassment, threats, and intimidation that Plaintiffs suffered following Defendant Ickom's termination were a result of Plaintiffs' opposition to Defendant Koch Foods and Defendant Ickom's unlawful employment practices.

175.     In October 2008, Ms. Domingo-Maldonado was terminated from her employment by Defendant Koch Foods.

176.     In December 2008, Ms. Castillo-Lopez was forced to leave her employment at Defendant Koch Foods because of the pressure and threats she experienced from other employees as a result of their belief that she had caused Defendant Ickom to be terminated.

### CLAIMS FOR RELIEF

### Section 1981, 42 U.S.C. § 1981
### (Against Defendants Koch Foods and Jessie Ickom)

177.     This claim is brought on behalf of all Plaintiffs pursuant to 42 U.S.C. § 1981 against all Defendants.

178.     Paragraphs 7-176 are re-incorporated and re-alleged herein by reference.

179.     As set forth above, Defendants Koch Foods and Ickom violated Plaintiffs'
rights by maintaining an objectively hostile and abusive work environment on
account of Plaintiffs' race.

180.     The unwelcome harassment and abuse to which Defendant Ickom
subjected Plaintiffs on account of their race was sufficiently severe and pervasive
to constitute a hostile, offensive, and intimidating work environment.

181.     Plaintiffs reasonably perceived their work environment to be hostile,
abusive, and discriminatory on the basis of race.

182.     Defendant Ickom's demands in his supervisory capacity that Plaintiffs pay
him in exchange for receiving permission to take leave or break time to which
they were entitled or to transfer to job positions for which they were qualified
constituted adverse employment actions against Plaintiffs by Defendants Ickom
and Koch Foods on account of Plaintiffs' race.

183.     As described above, Plaintiffs opposed Defendants Koch Foods and
Ickom's discriminatory deprivation of the rights of Latino employees to enjoy the
same contract-based rights enjoyed by non-Latino, African-American, and White
employees of Defendant Koch Foods by, *inter alia*, reporting and complaining
about this discrimination to Defendant Ickom and to other supervisory employees
of Defendant Koch Foods.

184.     As described above, as a result of Plaintiffs' opposition to Defendants'
discriminatory deprivation of their rights to enjoy the same contract-based rights
enjoyed by non-Latino, African-American, and White employees of Defendant

Koch Foods, Defendants retaliated against them with increased intimidation, assaults, undesirable job reassignments, demotions, actual and/or constructive discharge, and, in the case of Plaintiff Maria Cazorla, a refusal to re-hire her.

185.     Defendants' retaliatory conduct deprived Plaintiffs of their right under 42 U.S.C. § 1981 to oppose prohibited race discrimination in their employment relationship without suffering retaliation.

186.     Defendants' conduct deprived Plaintiffs of the contract-based rights enjoyed by non-Latino employees of Defendant Koch Foods in violation of 42 U.S.C. § 1981.

187.     Defendants' actions violated Plaintiffs' rights to receive full and equal benefit of all laws guaranteed by 42 U.S.C. § 1981, including Plaintiffs' rights to enjoy and benefit from nondiscriminatory employment relationships with Defendants Koch Foods.

188.     Defendants knowingly, willfully, intentionally, or recklessly acted to deprive Plaintiffs of their federally-protected rights.

189.     As a direct result of Defendants' violations of Plaintiffs' rights under 42 U.S.C. § 1981 described above, Plaintiffs have suffered injury to their property and/or persons.

190.     Plaintiffs seek declaratory and injunctive relief, attorneys' fees, costs of this action, and compensatory and punitive damages, in an amount to be determined at trial.

### Negligence Under Mississippi Law
### (Against Defendant Koch Foods)

191.     This claim is brought on behalf of all Plaintiffs against Defendant Koch Foods pursuant to Mississippi law.

192.     Paragraphs 7-176 are re-incorporated and re-alleged by reference as if fully set forth herein.

193.     Defendant Koch Foods owed a duty to its nonmanagerial employees, including Plaintiffs, to ensure that its supervisory employees did not wield their supervisory authority in such a way as to abuse, extort, or harass nonmanagerial employees in the workplace.

194.     Defendant Koch Foods breached its duty to Plaintiffs by failing to adequately screen, train, and supervise Defendant Ickom and other managers responsible for supervising Defendant Ickom and Plaintiffs.

195.     Defendant Koch Foods knew, or should have known, that Defendant Ickom and other managers subjected Plaintiffs to the above-described abusive, extortionary, and harassing practices between 2004 and 2008.

196.     The actions and inactions of Defendant Koch Foods in failing to adequately screen, train, and supervise Defendant Ickom caused Plaintiffs emotional and monetary harm for which they seek relief pursuant to Mississippi law.

197.     Plaintiffs seek all appropriate relief, including attorney's fees, costs of this action, and compensatory damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHERFORE, Plaintiffs respectfully request that the Court grant them the following relief:

a.    Enter a declaratory judgment that Defendants Koch Foods and

Ickom violated Plaintiffs' rights under the Civil Rights Act of 1866

(42 U.S.C. § 1981), as set forth in the preceding paragraphs, and

enjoin Defendants Koch Foods and Jessie Ickom from engaging in

such unlawful practices;

b.    Order that Plaintiffs be awarded compensatory damages for the

harm they suffered as a result of Defendants' violations of 42

U.S.C. § 1981 and Mississippi law, including but not limited to

consequential and emotional distress damages;

c.    Order that Plaintiff Cazorla be awarded reinstatement, back pay,

and/or front pay, for Defendants Koch Foods and Jessie Ickom's

violations of 42 U.S.C. § 1981;

d.    Award Plaintiffs punitive damages for Defendant Koch Foods and

Defendant Ickom's violations of 42 U.S.C. § 1981;

e.    Award Plaintiffs pre- and post-judgment interest as allowed by

law;

f.    Award Plaintiffs reasonable attorney's fees for the services of their

attorneys, and their costs; and

g.    Such further relief as the Court deems necessary and proper.

Respectfully submitted,


Robert McDuff
Mississippi Bar No. 2532
Sibyl Byrd
Mississippi Bar No. 100601
Law Office of Robert McDuff
767 North Congress Street
Jackson, MS  39202
Telephone: (601) 969-0802
Facsimile: (601) 969-0804
rbm@mcdufflaw.com
sbyrd@mcdufflaw.com

COUNSEL FOR ALL PLAINTFFS

**/s/ Spring Miller**
Spring Miller
Tenn. Bar No.  026485
*Admitted Pro Hac Vice*
Stacie Jonas
Tenn. Bar No. 027334
*Admitted Pro Hac Vice*
Douglas L. Stevick
Tenn. Bar No. 021711
*Admitted Pro Hac Vice*
SOUTHERN MIGRANT LEGAL SERVICES, A Project
of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd.
Ste. 135
Nashville, TN 37217
Telephone:  (615) 750-1200
Fascimile: (615) 366-3349
dstevick@trla.org

COUNSEL FOR PLAINTIFFS MARIA CAZORLA,
MAGNOLIA PEREZ-HERNANDEZ, IDALIA
DOMINGO-MALDONADO, ALMA ROXANA
ROBLERO-AGUILAR, IVONE CASTILLO-LOPEZ,
MARDOQUEO LOPEZ-LOPEZ, JOSE CORDERO-
TOLEDO, AND JOSE RIVERA-ARANDA

## Certificate of Service

I, Spring Miller, hereby certify that on this 24th day of January 2011, I electronically filed this document through the Court's ECF system, which will send notice to attorneys for Defendant Koch Foods at the following addresses:

Scott W. Pedigo      spedigo@bakerdonelson.com, mfloyd@bakerdonelson.com
Jennifer G. Hall      jhall@bakerdonelson.com, cjenkins@bakerdonelson.com, kjones@bakerdonelson.com

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Meadowbrook Office Park (39211)
4268 I-55 North
Post Office Box 14167
Jackson, Mississippi 39236-4167
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

This second amended complaint will be served on Defendant Jessie Ickom, who has not entered an appearance in this case, in accordance with the Federal Rules of Civil Procedure.

**s/   Spring Miller**