IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| MARIA CAZORLA, et. al., | ) | |
| Plaintiffs | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION NO. |
| KOCH FOODS OF MISSISSIPPI, LLC and | ) | 3:10-CV-135-DPJ-FKB |
| JESSIE ICKOM , | ) | |
| Defendants. | ) | |
| | ) | |
| *Consolidated With* | ) | |
| EQUAL EMPLOYMENT OPPORTUNITY | ) | CIVIL ACTION NO. |
| COMMISSION, | ) | |
| Plaintiff, | ) | 3:11-CV-00391-CWR-LRA |
| vs. | ) | |
| | ) | |
| KOCH FOODS OF MISSISSIPPI LLC | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR A
PROTECTIVE ORDER**

**INTRODUCTION**

Plaintiffs seek a limited protective order under Fed. R. Civ. P. 26(c) prohibiting

inquiry by Defendant into (1) Plaintiffs,' witnesses,' and class members' immigration status and

history, including their birth places, applications for immigration relief, involvement in any

immigration proceedings, and past or current immigration status; (2) Sensitive personal

identifying information, including plaintiffs' and class members' social security numbers and

any aliases used by plaintiffs and class members' other than those used while employed with

Defendant; (3) Plaintiffs' and class members' tax returns and related documents, and (4)

Plaintiffs' and class members' work histories other than with Defendant Koch Foods.  These four

categories of information which Plaintiffs seek to protect are irrelevant to or, at most, only

tangentially relevant to the elements of the claims and defenses in this case.[1]

Moreover, federal law protects all employees from the discriminatory conduct alleged in this suit, regardless of their immigration status or history.  Even if the plaintiffs' and class members' social security numbers, aliases, tax information, or work histories had any collateral relevance, there is a significant and real risk of harm if this information is discovered because it will invariably result in the disclosure of each individual's past and current immigration status. Defendant's discovery into these areas will require that individuals disclose information that could be used against them in immigration enforcement proceedings and will foster an increased likelihood that many members of the class could be removed from the country while the lawsuit is pending, or minimally, be frightened away from participating in the litigation altogether. The result is a chilling effect on the Plaintiffs' and class members' willingness to participate in this lawsuit and to cooperate with the federal government in the EEOC's prosecution of this case. Workers must be allowed to seek vindication of their federally protected civil rights, including holding their employers responsible for civil rights violations, without fear of deportation for having done so.  If required to produce information in these four categories of discovery areas, EEOC's ability to carry out its statutory mandate to enforce civil rights laws in all of the nation's workplaces will be unduly burdened and needlessly compromised.  For these reasons, the Plaintiffs submit that good cause exists to enter a protective order barring discovery or inquiry into the plaintiffs' and class members' immigration status and history,  social security numbers, aliases, tax information, and work histories.

## FACTUAL AND PROCEDURAL BACKGROUND

---

[1]   While this motion focuses on these particular issues, neither the Commission, nor Individual Plaintiffs intend to waive other appropriate objections in discovery. Instead, this motion is intended to address the most sensitive and pressing concerns from which many other discovery issues are expected to flow, including the scope of deposition testimony.

The *Cazorla* Plaintiffs and Plaintiff-Intervenors (hereinafter "Individual Plaintiffs") in this consolidated action are current and former Hispanic employees of Defendant Koch Foods. They allege that they were subjected to a scheme of severe harassment and abuse while employed by Koch Foods, and that Koch Foods retaliated against them with heightened intimidation and abuse when they opposed its unlawful practices. They have asserted claims under 42 U.S.C. § 1981 and Mississippi law. Plaintiff, the U.S. Equal Employment Opportunity Commission (EEOC) is directed by statute to bring lawsuits in the public interest on behalf of individuals aggrieved by unlawful discrimination. In the current action, the EEOC seeks relief for a class of over 100 employees, including the individuals named in the EEOC's complaint, who the Commission alleges were subjected to harassment on the basis of race/national origin (Hispanic) and sex (female). The EEOC's allegations overlap largely with those made by Individual Plaintiffs.

The claims of unlawful harassment and retaliation underlying this action rest on serious allegations of physical and sexual assaults on Hispanic employees, demands for payment by a supervisor in exchange for better work assignments, use of leave, or bathroom breaks, and a work environment saturated with degrading references by supervisors to Hispanic employees' race and/or national origin, including the employees' perceived immigration status. When employees opposed the conduct or attempted to report the harassment, they suffered retaliation in the form of reductions in wages, demotions, unfavorable work reassignments, increased harassment, threats of violence, threats of arrest or deportation, and termination.

## COMPLIANCE WITH LOCAL RULE 37.1

On August 20, 2012, Defendant served Individual Plaintiffs and the Commission with Interrogatories and Requests for Production seeking irrelevant and sensitive information that

will reveal, among other things, the immigration status and history of the plaintiffs and class members. On September 4, 2012, Plaintiffs jointly notified Defendant of their objections to all discovery requests which would require disclosure of past or current immigration status of any individual, as well as all discovery requests seeking information that would likely reveal that same information, such as requests for social security numbers, aliases, tax information, or work histories. *See* Ex. 1 (Letter from S. Miller to S. Pedigo, Sept. 4, 2012). Plaintiffs notified Defendant that they viewed these requests to be improper and prejudicial areas of inquiry. Plaintiffs requested that Defendant withdraw or offer to narrow the scope of its inquiries. Defendant refused to withdraw or modify its requests. Without offering any explanation, Defendant responded simply by stating that it "disagree[d]" with Plaintiffs' position. *See* Ex. 2 (Letter from S. Pedigo to S. Miller, Sept. 7, 2012). On September 11, 2012, Plaintiffs prepared and requested that Defendant execute a Certificate of Good Faith in connection with this motion. Plaintiffs submit that early resolution of this dispute is required because additional discovery disputes such as the areas permissible for deposition inquiry will flow from this issue. In an effort to resolve these disputes earlier and more efficiently, Individual Plaintiffs and Plaintiff EEOC submit the foregoing joint motion for a protective order pursuant to Fed. R. Civ. P. 26(c).

## ANALYSIS

Fed. R. Civ P 26(c) provides that to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense" a court may, upon a showing of good cause by the moving party, make an order "forbidding inquiry into certain matters, or limiting the scope of [discovery]." FED. R. CIV. P. 26(c)(1)(D). Due to the significant "potential for abuse" and the important privacy interests that may be implicated by the discovery process, trial courts have broad authority to issue protective orders pursuant to Rule 26(c) upon a showing of

good cause.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  Additionally, Rule 26

provides that a court may limit discovery where "the burden or expense of the proposed

discovery outweighs its likely benefit."  FED. R. CIV. PRO. 26(b)(2).

      In making a determination as to whether good cause has been shown pursuant to Rule

26(c), courts balance the moving party's showing against the interests of the opposing party.  *See*

*David v. Signal Int'l, LLC*, 257 F.R.D. 114, 122-26 (E. D. La. 2009) (weighing defendant's

interest in obtaining discovery regarding plaintiff's immigration status and employment history

against the *in terrorem* effect permitting such discovery would have on plaintiffs and other

prospective civil rights litigants).

      Courts routinely grant orders similar to the one Plaintiffs seek here to protect civil rights

claimants from undue prejudice and to ensure that they are able to assert their rights free of

harassment and intimidation.   *See, e.g.*, *In re Reyes*, 814 F.2d 168, 170–71 (5th Cir. 1987)

(issuing writ of mandamus in FLSA case directing the trial court to withdraw its order

compelling discovery of the plaintiffs' immigration status because such an order "could inhibit

[plaintiffs] in pursuing their rights in the case because of possible collateral wholly unrelated

consequences, because of embarrassment and inquiry into their private lives which was not

justified"); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1075 (9th Cir. 2004) (upholding protective

order granted by a district court prohibiting all discovery into immigration status because of the

chilling effect such discovery could have upon plaintiffs' ability to assert their rights under Title

VII); *Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (noting that "Courts have generally

recognized the *in terrorem* effect of inquiring into a party's immigration status when irrelevant to

any material claim" and finding that "[w]hen the potential for abuse of procedure is high, the

Court can and should act within its discretion to limit the discovery process, even if relevancy is

determined.").

Plaintiffs in this action seek to enforce critical rights under federal civil rights statutes. The information Plaintiffs seek to protect is not relevant to determining whether or not these rights were violated by Defendant, nor, with the exception of a single plaintiff,[2] is it relevant to the damages Plaintiffs seek as a result of those violations.  Defendant will not be harmed or unduly burdened by a prohibition on discovery of this non-relevant information.  Furthermore, discovery into the immigration status and history of plaintiffs, the social security numbers, aliases and tax returns of plaintiffs, and plaintiffs' work history with employers other than Defendant will only serve to intimidate and deter Individual Plaintiffs from asserting their rights and unduly disrupt their ability to testify.   Additionally, permitting such discovery could discourage other victims of unlawful discrimination from coming forward to denounce such discrimination and thereby undermine the public interest in ensuring compliance with Title VII of the 1964 Civil Rights Act.  The pertinent case law and the strength of Plaintiffs' and the Court's interests in preventing inappropriate and potentially abusive discovery directed at litigants in civil rights cases far outweigh any interest Defendants may have in discovering such information.

I.     **The Court should prohibit Defendant from making any inquiry that will reveal or lead to the immigration history or status of any plaintiff, class member, or witness.**

Defendant has served several discovery requests that expressly seek information regarding Plaintiffs' and/or the class members' immigration status and history. Specifically, Defendant's Interrogatory No. 1 and No. 7 to Individual Plaintiffs explicitly seek aliases, past

---

[2] Plaintiff Maria Cazorla seeks reinstatement and/or front pay, as well as back pay, for the violations she alleges under 42 U.S.C.§1981 and Mississippi law.  Individual Plaintiffs acknowledge that whether or not she is lawfully authorized to work in the United States and her work history subsequent to her discharge by Koch Foods are therefore proper subjects of discovery.

addresses, place of birth, social security numbers, identity and addresses of children, educational history, and involvement in immigration proceedings.[3]

In addition to these requests that explicitly inquire as to Plaintiffs' place of birth and involvement in any immigration proceedings, many of the other requests that Defendant has served on the Plaintiffs and on the EEOC are likely to result in the disclosure of sensitive information regarding immigration status or history.  For example, in Defendant's instructions to its Interrogatories to the EEOC, Defendant requests that all persons referenced be identified by "such information as is reasonably necessary to lead the location of the person" including their "addresses" and "place of employment."   Depending on the circumstances of each Plaintiff, other requests that Defendant has served could force disclosure of sensitive information regarding plaintiffs' immigration status or interactions with immigration law enforcement agencies.  Moreover, Plaintiffs' immigration status and history are expected to become topics of inquiry during depositions.  Furthermore, some of the class members and other possible witnesses are currently employed by Defendant and thus are at greater risk of harm, including loss of their job and initiation of deportation proceedings, if their immigration status is revealed. Defendant has indicated that its position is that Plaintiffs' immigration status and history are proper subjects of discovery in this action.  *See* Ex. 2.  Because producing this information is expected to result in harm and prejudice to the plaintiffs and the class members, Plaintiffs seek

---

[3] DEFENDANT'S CONSOLIDATED DISCOVERY REQUESTS TO INDIVIDUAL PLAINTIFFS, INTERROGATORY NO. 1:  State your full name, including all aliases and/or nicknames; your address since 2000; your current telephone number; the date and place of your birth; your marital status; your social security number; whether you have any children and, if so, the name, age, address, and telephone number of each of your children; and your complete educational background.

DEFENDANT'S CONSOLIDATED DISCOVERY REQUESTS TO INDIVIDUAL PLAINTIFFS, INTERROGATORY NO. 7: Identify each lawsuit of any kind whether bankruptcy, immigration, civil, criminal, or family, to which you have ever been a party by providing the style of the case and case number, the court in which the case was filed, the year in which the case was filed, the name of your attorney, the name of the opposing attorney, the nature of the lawsuit, the outcome of the case if it has been completed, and whether you gave a deposition or testified at trial in the lawsuit and, if so, whether you have a copy of the transcript of your testimony in your possession, custody, or control.

an order pursuant to Rule 26(c) barring inquiry into any individual's immigration status and history for the reasons set forth below.

> A.  **Immigration status is wholly irrelevant to Plaintiffs' claims.**

Individuals are entitled to the protections of 42 U.S.C. § 2000e or 42 U.S.C. § 1981 regardless of immigration status.  *See, e.g.*, *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641, 653-54 (5th Cir. 1974) (reh. den. 503 F.2d 567 (5th Cir. 1974))  (noting Congress' use of the term "all persons" in 42 U.S.C. § 1981 in holding that the statute protects aliens); *EEOC v. DiMare Ruskin, Inc.*, No. 2:11-cv-158, 2012 U.S. Dist. LEXIS 24952 at *20-21 (M.D. Fla., Feb. 15, 2012) (claimants' immigration status has no bearing on Defendant's liability under Title VII); *Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*, 518 F. Supp. 993, 1006 (S.D. Tex. 1981) ("When aliens are the victims of racial or other actionable discrimination under Section 1981, they have standing to sue under this section").

Importantly, upon receiving Plaintiffs' objections via written correspondence on September 4, 2012, Defendant failed to present Plaintiffs with any explanation, much less justification, for its inquiry into this area.  *See* Ex. 2.  Defendant has simply agreed to disagree but never stated why the immigration status of any person in this case bears any relevance to the issues or might otherwise lead to the discovery of admissible evidence.  As such, the discovery of such information should be barred.

> B.  **Even if the Court were to find that information related to immigration status is marginally relevant to this action, that relevance is outweighed by the risk of injury and prejudice to plaintiffs and claimants.**

Even if immigration status were to be found collaterally related to plaintiffs' claims, the Court must weigh that relevance against the *in terrorem* effect permitting discovery would have. Courts balancing these factors in similar actions have regularly held that the risk of injury and

harm to plaintiffs outweighs defendant's interest in accessing the information. *See In re Reyes*, 814 F.2d at 170 (recognizing that the discovery permitted by the district court "could inhibit petitioners in pursuing their rights in the case because of possible collateral wholly unrelated consequences, because of embarrassment and inquiry into their private lives which was not justified"); *Castillo v. Hernandez*, 2011 WL 1528762 at *9 (W.D. Tex. April 20, 2011) (granting plaintiffs' motion for a protective order as to immigration status, including work authorization and social security numbers, because permitting such inquiry would "have a chilling effect on Plaintiffs' ability and inclination to assert their rights"); *EEOC v. Willamette Tree Wholesale, Inc.*, No. 09-690-PK, 2010 U.S. Dist. LEXIS 97380 at *13 (D. Oregon July 8, 2010) (holding that intervenor plaintiff's privacy interest in protecting her Form I-9 information outweighed the public interest in disclosure); *Topo*, 210 F.R.D. at 79 ("[The] potential danger of deterring plaintiff from having her day in court by inquiring into a non-relevant matter such as her immigration status is precisely the type of 'oppression' Rule 26(c) was designed to prevent"); *Flores v. Albertson's, Inc.*, No. 01-cv-00515., 2002 U.S. Dist. LEXIS 6171, at *20–*21 (C.D. Cal. Apr. 9, 2002) (holding that the risk of harm to worker-plaintiffs outweighed defendant's need for immigration status-related discovery); *Liu v. Donna Karen Int'l, Inc.*, 207 F. Supp. 2d 191, 192-93 (S.D.N.Y. 2002) (same).  Here, where plaintiffs have alleged that Defendant's supervisory employees wielded threats related to Latino employees' purported or perceived lack of immigration status as a means of harassing Latino employees and intimidating them when they attempted to assert their workplace rights, there is a very real danger that permitting discovery of immigration status will seriously chill or outright preclude some plaintiffs and witnesses' participation in this action.  The fact that threatening and offensive statements based on Plaintiffs' purported immigration status form part of the allegations of a hostile work

environment does not render Plaintiffs' or any individual's *actual* immigration status relevant to this action.  Furthermore, even if the Court were to find Plaintiffs' actual immigration status marginally relevant, that relevance would be outweighed by the risk of prejudice and harm to plaintiffs.  Indeed, it would be a perverse result for the Court to hold that because Defendant's agents made hostile, offensive, and threatening comments regarding Plaintiffs' purported immigration status, Defendant is entitled to discovery of this sensitive and personal information, which is generally protected by courts.

### C.   Limiting Defendant's inquiry into immigration status in this action will further the enforcement objectives of federal civil rights statutes.

In addition to taking into account the harm that Individual Plaintiffs, class members, and witnesses are likely to suffer as a result of inquiries into their immigration status, courts also consider the deterrent effect permitting such inquiries could have on other workers subjected to discrimination in violation of our nation's civil rights laws.  *See Rivera*, 364 F.3d at 1064 ("Documented workers may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends[4]; similarly, new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding.  Any of these individuals . . . might choose to forego civil rights litigation"); *De La O v. Arnold-Williams*, No. CV-04-0192, 2006 U.S. Dist. LEXIS 76816, at *10 (E.D. Wash. Oct. 20, 2006) ("The Court finds compelling the concern…that requiring the Plaintiffs to disclose their immigration status would cause a chilling effect on similar civil rights actions."); *EEOC v First Wireless* Group, 225 F.R.D. 404, 406 (E.D.N.Y. 2004) ("[I]f this Court

---

[4] Indeed, the risk of harm to family of the plaintiffs and class members is clear in this case because Defendant has explicitly sought immigration related information in the very same request that it has sought the identity of the claimants' children. Although not the subject of this motion, Plaintiffs do not waive their right to object or seek protection for the identity of family members, including children, if that issue cannot be resolved between the parties.

does not suppress discovery into the Charging Parties' immigration status, it would significantly discourage employees from bringing actions against their employers who engage in discriminatory employment practices").   The public interest in ensuring that workers are not discouraged from coming forward to report violations of civil rights laws is particularly acute in actions like this one, where the EEOC is alleging that an employer engaged in a "pattern and practice" of unlawful discrimination and seeks relief for a class of affected workers.  "The EEOC's mission of protecting victims of employment discrimination would be severely hampered if potential victims are unwilling to come forward and cooperate because of fear of removal or other immigration consequences." *DiMare Ruskin*, 2012 U.S. Dist. LEXIS 24952 at *22.

This interest is of particular importance here, where over 100 individuals—some of whom are currently employed by Koch Foods and many of whom who still live in the Morton, Mississippi area—have come forward and requested the federal government's help to vindicate their civil rights.  The Commission must be able to ensure that their participation in the case, their availability for discovery and trial, and their willingness to communicate with the government as witnesses and victims of a legal wrong are not undermined or threatened by forced disclosure of information that could subject them to deportation.  As the court noted in *David., 257 F.R.D. at 122,* a protective order such as that sought here, "becomes necessary as it is entirely likely that any undocumented litigant forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face potential deportation."  (citations omitted).   The Commission will be substantially prejudiced if the aggrieved individuals for whom it seeks relief are not protected from unnecessary disclosure of their immigration status or other information that is designed to reveal same.

**II.   The Court should bar Defendant from obtaining highly sensitive information regarding Plaintiffs' social security numbers and aliases because Defendant has offered no justification for seeking this information and because the forced disclosure of this information would constitute a major invasion of Plaintiffs' privacy which could also reveal immigration status.**

Defendant requests that Plaintiffs provide all "aliases and nicknames" and their social security numbers.  *See* Def.'s Consolidated Disc. Requests to Indiv. Pls., Interrogatory No.1, cited in Part I, Footnote 3, *supra*.  Defendant offers no justification for its request for this sensitive and irrelevant information.   Courts have regularly precluded discovery of social security numbers in civil rights and employment lawsuits, finding that they are only marginally relevant, at most, to the claims and defenses in such actions.  *See, e.g., Uto  v. JobSite Servs., Inc.,* 269 F.R.D. 209, 210-13 (E.D.N.Y. 2010) (noting the irrelevance of plaintiffs' social security numbers to an action for unpaid wages and granting plaintiffs' motion for a protective order)*; Baca v. Brother's Fried Chicken*, No. 09-3134, 2009 U.S. Dist. LEXIS 42306, at *6 (E.D. La. May 13, 2009) (because plaintiffs in employment action were protected by relevant laws regardless of their immigration status, their social security numbers were irrelevant and defendants were prohibited from seeking this information).   Courts have recognized that the forced revelation of a worker-plaintiff's social security number, like his immigration status, could unduly harm him and undermine his ability to prosecute his claims.  *See De La O*, 2006 U.S. Dist. LEXIS 76816, at *12 ("For the same reasons the Court finds Plaintiffs' immigration status is protected, the Court finds Defendants are not entitled to ask Plaintiffs to disclose their social security numbers."); *Galaviz-Zamora v. Brady Farms, Inc*., 230 F.R.D. 499, 503 (S.D. Mich. 2005) (protecting plaintiffs from discovery of social security cards and other hiring related documents).

Courts have similarly granted orders protecting against employer-defendant discovery of

plaintiff's aliases.  *See, e.g., Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d

746, 749–51 (D. Md. 2008) (social security numbers, dates of birth, and aliases are irrelevant to

merits of employment claims); *EEOC v. Willamette Tree Wholesale, Inc.*, 2010 U.S. Dist. LEXIS

97380 at *13 (granting protective order as to intervenor plaintiff's use of aliases and noting that

the public interest would best be served by "avoiding the potential chilling effect on meritorious

employment discrimination claims" forced disclosure of such information would have).

Plaintiffs do not dispute that Defendant is entitled to information regarding any alias or nickname

that any individual may have used during his or her employment with Defendant.  However,

Defendant has not – and could not – justify its request for any alias or nickname ever used by

any individual as relevant to the claims in this action arising out of Plaintiffs' employment with

Defendant.

> ### III.   Defendant cannot make any showing of relevance or compelling need required to overcome the established presumption against forced disclosure of tax returns.

Defendant seeks production of each Individual Plaintiff's tax returns from 2003 to the present.[5]

Defendant has not expressly requested the tax information of the EEOC's class members, but to

the extent that documentation of income from any source other than Koch is responsive to

requests made of the EEOC, the EEOC objects on the same grounds as stated herein.

Plaintiffs acknowledge that the income history of Plaintiff Maria Cazorla is relevant to

this action in light of her plea for back pay and front pay and/or reinstatement, and have

---

[5] DEFENDANT'S CONSOLIDATED DISCOVERY REQUESTS TO INDIVIDUAL PLAINTIFFS, DOCUMENT REQUEST NO. 20: All documents including, but not limited to, all federal and state income tax returns (including schedules), IRS W-2 and 1099 forms, payroll checks and stubs, bank statements, canceled checks, and receipts, that disclose all actual or deferred income earned or other moneys received by you from any source from January 1, 2003 to the present, including, but not limited to, income from any employer, self-employment, business venture, unemployment compensation, workers' compensation, social security benefits, welfare benefits, disability (public or private) benefits, health insurance benefits, investment income, gifts, or any income supplement of any form, and any documents setting forth the terms of any pension or profit sharing plan or other benefits to which you may be entitled from any employer either presently or in the future.

indicated to Defendant that they are willing to produce documentation, including IRS Forms W-2 and 1099, reflecting Plaintiff Cazorla's income history for the relevant time period. *See* Ex. 1. However, Defendant has made no showing that any other Individual Plaintiff's tax returns or related documents are at all relevant, or that any relevant information contained in Plaintiff Cazorla's tax returns—as distinguished from Forms 1099 and W-2—cannot be obtained through some less obtrusive means. Furthermore, since Defendant has offered no explanation at all as to the relevance of the information sought through this request, Plaintiffs are at a loss to make sense of the broad date range (2003 to the present) it encompasses.

There is a widely recognized public policy against the disclosure of tax returns. *Natural Gas Pipeline Co. v. Energy Gathering*, 2 F.3d 1397, 1411 (5th Cir. 1993) ("Income tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as a part of discovery.") This policy is predicated on the governmental interest in encouraging full disclosure of income in order to maximize revenues. *Id*. at 1411 ("Not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system.") (citation omitted). Public disclosure of such information would discourage full disclosure to the government. *See, e.g., Robinson v. Duncan*, 255 F.R.D. 300, 303 (D.D.C. 2009) (denying defendant's motion to compel tax records because "[w]hile the cost to plaintiff of producing the returns is minuscule, its societal costs are great . . . The American tax system is one of voluntary self-exaction and taxpayers might be less than candid on their returns if those returns were available to opposing parties in litigation in the ordinary course."). This is especially the case where the forced disclosure of tax returns would serve as a deterrent for potential litigants to come forward and assert their rights under remedial statutes such as Title

VII and Section 1981. *Robinson*, 255 F.R.D. at 303 (denying defendant's motion to compel plaintiff's tax records because "the provisions of Title VII and other civil rights statutes that permit the award of damages to those who are victimized by illegal discrimination are designed to eradicate that discrimination by encouraging victims to come forward and complain about it. There would, however, be a significant deterrent to the effectuation of that policy if every civil rights plaintiff had to produce her tax returns as a precondition of seeking damages.").

In light of this well-established public policy, courts in the Fifth Circuit have utilized a two-pronged test when deciding whether to order a party to disclose its tax returns: "the court must find both 'that the returns are relevant to the subject matter of the action,' and 'that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.'" *Channel Control Merchs*., LLC v. Davis, No. 2:11-cv-21, 2012 U.S. Dist. LEXIS 54921, at *7 (S.D. Miss. Apr. 19, 2012) (citing *Dawson Farms, LLC v. BASF Corp*., No. 06-0737, 2007 U.S. Dist. LEXIS 10679, at *1 (W.D. La. Feb. 15, 2007)); *see also Thompson v. Ruff & Tuff Elec. Vehicles, Inc*., No. 10-cv-449, 2011 U.S. Dist. LEXIS 47329, at *10-14 (M.D. La. Apr. 20, 2011) (applying the two-pronged test and denying a motion to compel tax returns); *Rengifo v. Erevos Enters., Inc.*, No. 06 Civ. 4266, 2007 U.S. Dist. LEXIS 19928, at *7 (S.D.N.Y. Mar. 20, 2007) (applying the two-pronged test and granting plaintiff's motion for a protective order barring inquiries into his social security number and tax records).

Here, Defendant cannot even satisfy the first "relevancy" requirement of the two-pronged test. No plaintiff except Plaintiff Cazorla is claiming lost income damages and therefore the information contained in the tax returns of all other plaintiffs is simply irrelevant. *See De La O*., 2006 U.S. Dist. LEXIS 76816, at *7-8 (finding that the tax returns of Title VII plaintiffs who were not seeking lost income damages were irrelevant). Defendant has not offered any

explanation for how Plaintiffs' tax returns since 2003 are relevant to this action, much less why it

cannot obtain any conceivably relevant information in them through less invasive means, and

therefore should be barred from obtaining them.

**IV.    The potential for injury posed to Plaintiffs by allowing Defendant Koch Foods unfettered access to their employment history substantially outweighs any relevance that such information could have to the claims and defenses in this case.**

Defendant seeks to discover broad information regarding each Plaintiff's and class

member's income and work history dating back nine to twelve years.[6]  Defendant has offered no

---

[6] **DEFENDANT'S CONSOLIDATED DISCOVERY REQUESTS TO INDIVIDUAL PLAINTIFFS:**

INTERROGATORY NO. 31: Identify all sources of income you have had since 2003, including but not limited to salary, commission, bonuses, or other forms of incentive compensation, benefits, dividends, even if such income was not reported to the government, including the yearly amount of such income from each source, the reason(s) for receiving such yearly income from each such source, and the method by which you received payment for such income each year.

INTERROGATORY NO. 32:  State in complete detail all efforts you have made to find employment or otherwise earn income from a source other than Koch Foods from the time of your departure from Koch Foods to the present, including but not limited to: the dates each such effort was made, the identity (including name, address, and phone number) of any potential employer, recruiter, or employment agency to whom you have submitted a resume, letter, or application; whether you have been offered any jobs, including the identity of the potential employer offering such job; and whether you have turned down any offers of employment, including the dates for each rejection, the compensation offered and the reason for your rejection of the job offer(s).

DOCUMENT REQUEST NO. 14: All documents evidencing any compensation you received from any employer since 2003, including from each and every source identified in your Response to Interrogatory No. 31.

DOCUMENT REQUEST NO. 21: All documents that relate or refer to any efforts you have made to find employment or otherwise earn income from a source other than Koch Foods from January 1, 2003 to the present.

**DEFENDANT'S CONSOLIDATED DISCOVERY REQUESTS TO EEOC:**

INTERROGATORY NO. 8:  Identify each Claimant's employers, including places he or she submitted an application for employment since 2000, other than Koch Foods, including the name, address, and telephone number of each such employer, the position that he or she held with each such employer, the hourly pay or annual salary that he or she receive( d) from each such employer, the name of his or her supervisor, whether he or she have ever made any complaints of discrimination or harassment on any grounds at each such place of employment and the length of time that he or she was employed or have been employed, if he or she is currently employed.  If such Claimant made complaints of discrimination and/or harassment at any of the identified places of employment, state in detail the circumstances of the alleged discrimination and/or harassment, when such alleged discrimination and/or harassment occurred, the method in which he or she reported such discrimination and/or harassment, and the result of reporting such discrimination and/or harassment.

16

explanation of how information regarding work and income history could be construed as relevant to the claims or defenses in this case and Plaintiffs cannot fathom how all such information from 2000 or 2003 to the present could be relevant for each Plaintiff or each class member.[7]

Courts have frequently held that any relevance of a civil rights plaintiff's employment history is outweighed by the risk of harm posed to the plaintiff by permitting discovery into that history.  *See David,* 257 F.R.D. at 126 (granting protective order to worker-plaintiffs preventing defendant's inquiries into immigration status, current addresses, and post-termination employment based on danger of intimidation and chilling effect to workers)*; Woods  v. Fresenius Med. Care Group of N. Am.*, No. 1:06-cv-1804, 2008 U.S. Dist. LEXIS 3756 at *5 (S.D. Ind. Jan. 16, 2008) ( "[A]n employment discrimination plaintiff does not open her entire

---

INTERROGATORY NO. 15: Describe and identify in detail all efforts made or undertaken by each Claimant since he or she left the employment of Koch Foods to obtain part-time or full-time employment or self-employment, including all potential employers and employment agencies contacted, the date of each such contact, the methods(s) of contact (e.g., by telephone in writing, email or in person), the person contacted and the status of each contact, including whether an offer was made.  If an offer was made, state the date that the offer was made and whether such offer was full-time or part-time.  If any Claimant has turned down or not responded to or postponed any offers of part-time or full-time employment or any employment opportunities, identify each offer or employment opportunity that was declined or not responded to or postponed, the date of each such offer or employment opportunity; the details of the terms of each such offer or opportunity (i.e., position offered, salary and benefits); and state the reasons why the offer was turned down, not responded to or postponed. If any Claimant has made no efforts to obtain employment, state all the reasons why no such efforts were made.

DOCUMENT REQUEST NO. 13:  All documents evidencing any compensation each and every Charging Party and/or Claimant received from any employer since his or her departure from Koch Foods, including each and every source of income such person may have received.

DOCUMENT REQUEST NO. 16: An executed Authorization for Release of Employment Records in the form of Exhibit "C" attached to these Discovery Requests for each and every Charging Party and/or Claimant on whose behalf you seek relief.

DOCUMENT REQUEST NO. 18:  All documents that relate or refer to any efforts each and every Charging Party and/or Claimant has made to find employment or otherwise earn income from a source other than Koch Foods since his or her departure from Koch Foods to the present.

[7] Plaintiffs acknowledge that in light of Plaintiff Cazorla's plea for back pay and front pay/reinstatement, her work history since her termination by Koch Foods in 2007 are relevant and have communicated to Defendant their intention to produce documents and information reflecting such history.  *See* Ex. 1.

work history up for discovery by the defendant as a matter of course; rather, the defendant must demonstrate a specific reason why the information is relevant to the particular claims and defenses in the case at hand"); *Reynolds v. York*, No. 3-04-MC-045-P, 2004 U.S. Dist. LEXIS 12313, at *1-*4 (N.D. Tex. July 2, 2004) (quashing subpoena on party's former employer because his privacy interests outweighed probative value); *EEOC v. Renaissance III Org*., No. 3-05-CV-1063-B, 2006 U.S. Dist. LEXIS 15734, at *3 n.1 (N.D. Tex. Apr. 4, 2006) (noting that court had quashed 21 subpoenas of plaintiffs' former employment because privacy interests of plaintiffs outweighed benefit to defendant); *Maxwell v. Health Center of Lake City, Inc*., No. 3:05-cv-1056-J-32MCR, 2006 U.S. Dist. LEXIS 36774, at *10–*11 (M.D. Fla. June 6, 2006) (granting protective order limiting inquiries into work and wage history); *Centeno-Bernuy v. Becker Farms*, 219 F.R.D. 59, 61-62 (W.D.N.Y. 2003) (holding that relevance of information regarding plaintiffs' residences and places of employment is clearly outweighed by the potential that this information may be used to harass, oppress, or intimidate the plaintiffs).   Defendant Koch Foods has made no showing—or even offered any justification—as to how Plaintiffs' or the class members employment records from 2003 to the present are at all relevant to this case, and therefore the Court should protect Plaintiffs from being forced to disclose this information.

## V.     Conclusion

Individual Plaintiffs and the Commission seek to protect confidential information that is irrelevant or, at most, tangentially relevant to the determination of whether Defendant violated the rights of the Plaintiffs and/or the class members during their employment with Defendant. The broad discovery sought by Defendant of documents or information related to Plaintiffs' and class members' immigration status and history, social security numbers, aliases, tax returns, and work history poses a serious risk of prejudice and harm to Plaintiffs and class members in this

action.  Permitting such discovery could hinder the participation of Plaintiffs, class members, and even witnesses in this action and deter other aggrieved individuals from asserting their rights under important remedial statutes.  For the foregoing reasons, Plaintiffs and the Commission respectfully request that this Court grant Plaintiffs' Joint Motion for a Protective Order.

Respectfully submitted,

**/s/ Ylda Marisol Kopka_____**
Ylda Marisol Kopka
Trial Attorney
IL Bar No. 6286627
ylda.kopka@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
1130- 22nd Street South
Suite 2000
Birmingham, Alabama 35205
Tel No. (205) 212-2062
Fax: (205) 212-2041

**/s/ Spring Miller**
Spring Miller
Tenn. Bar No. 026485
smiller@trla.org
*Admitted Pro Hac Vice*
Caitlin Berberich
cberberich@trla.org
Tenn Bar. No. 025780
*Admitted Pro Hac Vice*
Stacie Jonas
Tenn. Bar No. 027334
sjonas@trla.org
*Admitted Pro Hac Vice*
SOUTHERN MIGRANT LEGAL
SERVICES
A Project of Texas RioGrande Legal Aid,
Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 750-1200
Fascimile: (615) 366-3349

COUNSEL FOR PLAINTIFFS MARIA
CAZORLA, MAGNOLIA PEREZ
HERNANDEZ, ALMA ROXANA
ROBLERO-AGUILAR, JOSE LUIS
CORDERO-TOLEDO, MARDOQUEO
LOPEZ-LOPEZ, JOSE RIVERA
ARANDA, IVONE CASTILLO-LOPEZ,
IDALIA DOMINGO-MALDONADO,
ARACELY CALDERON-CORTEZ, AND
AGUSTIN BARRAGAN-DAVALOS

**/s/ Robert McDuff**
Robert McDuff
Mississippi Bar No. 2532
rbm@mcdufflaw.com
Sibyl Byrd
Mississippi Bar No. 100601
scb@mcdufflaw.com
MCDUFF & BYRD
767 North Congress Street
Jackson, MS 39202
Telephone: (601) 969-0802
Facsimile: (601) 969-0804

COUNSEL FOR ALL INDIVIDUAL
 PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of September, 2012, I electronically filed this document with the Clerk of Court using the ECF system, which sent notice of such filing to all counsel of record in this action.

**/s/  Spring Miller**